UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re: John Michael Perrine,

          Case No. 18-31333-jda
          Chapter 13
      Debtor.          Hon. Joel D. Applebaum
_____/

David A. McCarty and
Sandra L. McCarty,

      Plaintiffs,

v.          Adv. P. No. 20-03056-jda

John Michael Perrine and
Jennifer L. Perrine,

      Defendants.

_____/

## OPINION GRANTING DEBTOR/DEFENDANT'S MOTION TO SET ASIDE ADMISSIONS AND GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Debtor/Defendant John Perrine's Motion to Set Aside Admissions and Plaintiffs' Motion for Summary Judgment. For the reasons set forth below, Debtor's Motion to Set Aside Admissions is GRANTED, and Plaintiffs' Motion for Summary Judgment is GRANTED IN PART.

I.

## FACTUAL BACKGROUND

In 2006, defendants John and Jennifer Perrine resided at 2772 Autumn Creek Lane, Howell, Michigan (the "Autumn Creek home").[1] Around that time, Defendants were building a

---

[1] Defendants are married, but they separated in 2009. Throughout this Opinion, Jennifer and John Perrine will be referred to jointly as "Defendants"; John Perrine, individually, will be referred to as "Debtor."

new home at 4025 Prairie Rose, Howell, Michigan (the "Prairie Rose home"). Defendants contracted with Custom Estate Builders, Inc. to build the Prairie Rose home.

Plaintiffs, David and Sandra McCarty, are defendant Jennifer Perrine's parents. Beginning in February 2006, Plaintiffs provided Defendants with interest-free funding for the construction of the Prairie Rose home in the amount of $255,000. Plaintiffs provided the funding in four installments: (i) a February 6, 2006 disbursement of $30,000 to Jennifer Perrine; (ii) a March 17, 2006 disbursement of $75,000 to Custom Estate Builders on Defendants' behalf; (iii) a May 8, 2006 disbursement of $75,000 to Custom Estate Builders on Defendants' behalf; and (iv) a June 15, 2006 disbursement of $75,000 to Custom Estate Builders on Defendants' behalf. (Plaintiff's Motion for Summary Judgment (hereinafter "Plaintiff's MSJ"), Ex. A, Credit Union One statement dated August 18, 2006.

Around August 24, 2006, with construction complete, Defendants closed on the purchase of the Prairie Rose home. However, because of the downturn in the real estate market, they were unable to sell the Autumn Creek home. The Autumn Creek home sat empty for a period of time, although, for one year, 2011, the home was leased to renters. The home was eventually sold in 2013.

Both before and after the Autumn Creek home sold in 2013, Plaintiffs received some payments from Defendants; specifically, in 2011, $4,800 in rental proceeds from the Autumn Creek home; in 2013, $106,000 in proceeds from the sale of the Autumn Creek home; in 2015, $5,000 from Defendants' income tax refund; in 2016, $10,000 in proceeds from the sale of a vehicle; and in 2016, $1,700 from Defendants' income tax refund. These payments totaled $127,500, reducing the amount Plaintiffs assert is owing to them to $127,500.

On March 6, 2018, plaintiff Sandra McCarty wrote a letter to Defendants which provided an accounting of the loan balance and insisted Defendants make immediate arrangements to pay the $127,500 balance due. (Plaintiffs' MSJ Ex. B).[2]

On April 10, 2018, in a letter responding to her mother, Jennifer Perrine acknowledged the loan and Defendants' collective responsibility to pay the balance due. Ms. Perrine also promised to begin making monthly payments and to pay a lump sum out of the proceeds of the sale of the Prairie Rose home at some unspecified future date. (Plaintiffs' Ex. C). The letter included a payment in the amount of $1,500, which brought the loan balance down to $126,000. No further payments were made after this date.

On May 30, 2018, Debtor filed his individual chapter 13 bankruptcy petition. Plaintiffs are not listed on Debtor's list of creditors, nor is the debt allegedly owed to them included on Debtor's schedules. The Prairie Rose home is listed on Schedule A as being owned "by the entireties" with Jennifer Perrine. Schedule D discloses a mortgage on the Prairie Rose Home in the amount of $245,009. The mortgage, held by Wells Fargo Bank, was taken out in 2006. Schedules D and H indicate that Debtor is the sole obligor on the mortgage. Amended Schedules E/F and H indicate that, with one exception not relevant to the present Motion, Debtor has no joint debts.[3]

On August 8, 2018, the deadline for filing claims in Debtor's chapter 13 case expired. Plaintiffs did not file a claim because they were not listed on Debtor's list of creditors and were unaware of Debtor's bankruptcy.

---

[2] The letter, to "Jennifer & John," states, in part "you need to do something about paying back the balance of the money we loaned you for your house. . . . we really need our money to live on. . . . " MSJ Ex. B.

[3] On August 16, 2018, Debtor amended schedules A/B, D and H to add a co-debtor on a car loan owed to Chase Auto (Dkt. 26). The co-debtor is not Jennifer Perrine.

On August 22, 2018, Debtor's chapter 13 plan was confirmed (Dkt. Nos. 7 and 28). The 60-month plan initially provided for monthly payments of $277, with a subsequent monthly payment increase to $500. Under the terms of the Plan, Debtor makes a $1,491.61 monthly mortgage payment on the Prairie Rose house directly to Wells Fargo. The Order Confirming Plan indicates that "[c]lass 9 unsecured creditors that have filed a timely claim shall receive no less than 100%." (Dkt. 28).[4]

In October 2020, Plaintiffs filed a state court collection action against Defendants, seeking to recover the $126,000 owed to Plaintiffs. When they attempted to serve Debtor with the state court complaint, Plaintiffs' state court counsel was informed of Debtor's bankruptcy filing.

On November 14, 2020, Plaintiffs filed the present adversary proceeding against Debtor and his non-filing spouse. Count I of the three-count complaint alleges that Defendants owe Plaintiffs $126,000 and that the debt is non-dischargeable pursuant to 523(a)(3)(A) (discharge exception for debts not listed or scheduled). Counts II and III seek to lift the stay and co-debtor stay as to Debtor and his non-filing spouse.

On December 13, 2020, Debtor filed an answer to the adversary complaint (Dkt. 6). In his answer, Debtor asserts that there is no loan agreement, that he does not owe Plaintiffs any money, and that Plaintiffs have no claim against him. Jennifer Perrine did not file an answer to the adversary complaint.[5]

On March 11, 2021, Plaintiffs served Debtor with requests for admissions, interrogatories, and production of documents (Dkt.18), hereinafter "the discovery request"). Plaintiffs sought

---

[4] The Order Confirming Plan lifts the stay as to Wells Fargo Bank, and three other creditors who receive payments directly from Debtor rather than from the Trustee through the Plan (Dkt. 28).

[5] On December 18, 2020, a clerk's entry of default was entered against Jennifer Perrine. Ten days later, on December 28, 2020, a default judgment was entered against her.

admissions on the essential elements of Plaintiffs' claim. Debtor's response was due April 12, 2021, but no response was filed.

Because Debtor did not file a timely response to the discovery request, on April 19, 2021, Plaintiffs filed a Notice of Matters Deemed Conclusively Admitted Per Plaintiffs' Requests for Admission to Defendant (Dkt. 29). The Notice deems admitted all of the requests for admissions set forth in the discovery request.

On that same date, relying on the Debtor's deemed admissions, Plaintiffs filed the present Motion for Summary Judgment (Dkt. 30).

Approximately 4 hours later, Debtor's counsel filed unsigned Answers to Plaintiffs' First Set of Interrogatories (Dkt. 31). In his unsigned Answers, Debtor denies all of the admissions sought by Plaintiffs. Specifically:

> (1) With respect to the existence of the alleged funding arrangement/loan agreement, Debtor asserts that he **"did not request or initiate this arrangement" and "initially rejected this offer** [from his in-laws] on multiple occasions." Debtor was "pursu[ing] a conventional collateral loan" for the Autumn Creek property, and "[b]oth the Plaintiffs and Jennifer continued to pursue this advancement and made an agreement outside of my input or agreement." Further, Debtor asserts that he **"only relented to let Jennifer make the decision to accept funding from her parents [to] try to save the marriage**. . . " and that he "did not personally receive any funding, nor was any funding provided addressed to me, or signed by me. . . " (Debtor's Response to Plaintiffs' First Set of Interrogatories at 1-2,(emphasis added), hereinafter "Interrogatory Responses at __");

> (2) With respect to the $30,000 funding advances made by Plaintiffs to Jennifer Perrine, **Debtor asserts that he has no knowledge as to when that money was provided to Jennifer, although he does "acknowledge to seeing a check** that Jennifer Perrine wrote, signed, and sent for $29,000 **to Custom Estates Builders**, Inc. on February 17, 2006. (Interrogatory Responses at 2, emphasis added).

> (3) **With respect to the funding advances made by Plaintiffs' to Custom Estates Builders, Inc**. on March 17, 2006 (in the amount of $75,000), May 8, 2006 (in the amount of $75,000), and June 15, 2006 (in the amount of $75,000), **Debtor** asserts that he "**can only assume that the Plaintiffs [advanced the funds] to Custom Estates Builders, Inc. as [he] did not receive, intercept, or issue any**

5

**funding to Custom Estates Builders, Inc. as there were no issues or concerns relayed to me by Custom Estates Builders, Inc**." (Interrogatory Responses at 2-3, emphasis added);

(4) **With respect to payments made by Defendants to Plaintiffs from rents** collected through renting out the Autumn Creek property, the property was only rented out for one year, and **these payments were made "at the insistence from Jennifer, as she 'felt bad' for this property not being sold in a timely manner."** (Interrogatory Responses at 3, emphasis added);

(5) With respect to the $10,000 paid to Plaintiffs from the sale of Debtor's 1987 Buick, those sale proceeds were not intended for Plaintiffs, rather, the vehicle was sold for $20,000, and Debtor split the proceeds with Jennifer. He kept $10,000 and was not "in a position to direct Jennifer to either pay or not pay the Plaintiffs, as this funding was hers to spend as she wished." (Interrogatory Responses at 3);

(6) With respect to the amount paid to Plaintiffs following the sale of the Autumn Creek property, Debtor asserts "[t]here were no discussions or agreements made at the initial discussion in 2006, that would constitute a contingency plan to be addressed or executed for a shortfall or short sale of the . . . Autumn Creek property . . .as the assumption was that the property would sell quickly once originally listed on the real estate market." (Interrogatory Responses at 3);

(7) Debtor was unaware of the letter from Mrs. McCarty to Jennifer outlining her demand for immediate repayment, and he "did not provide any responses to [the letter] that outlined any language that equated me providing any agreements and/or arrangements for any restitution for this shortfall." (Interrogatory Responses at 4).

Ten days later, on April 30, 2021, Debtor filed a Motion to Withdraw Admissions (Dkt. 32). Debtor's brief in support of the Motion to Withdraw Admissions asserts that Debtor's Counsel "inadvertently failed to file a timely response" to Plaintiffs' discovery requests, and that, under Fed. R. Civ. P. 36(b), the Court has the discretion to set aside the admissions. [6]

On May 2, 2021, Debtor filed his Response to Plaintiffs' Motion for Summary Judgment (Dkt. 33). In the Response, Debtor asserts that Plaintiffs "assisted their daughter and son-in-law

---

[6] It is unclear why Debtor waited 10 days after the filing of his unsigned responses to file the motion to set aside the admissions. Moreover, Debtor asserted that the failure to file timely responses was inadvertent and the responses were in his counsel's possession ready to be filed. However, given that the Interrogatory Responses were unsigned, and no documents have ever been produced by Debtor, the Court questions whether Debtor was actually in a position to timely file responses to Plaintiffs' discovery requests.

[Debtor] in the endeavor of building [the Prairie Rose house] as an investment." (Debtor's Response to Plaintiff's Motion for Summary Judgment at 1, hereinafter "MSJ Response at __"). "The investment was to be realized by the sale of the house the debtors owned on Autumn Creek Lane." (MSJ Response at 2). Due to the housing market collapse of 2008, Defendants "were unable to sell the house and obtain the return on the Plaintiff's investment. So [the] investment was taken at a loss." (MSJ Response at 2). The loss "from the liquidation of the investment resulted in the natural end of the investment." (MSJ Response at 3). Debtor asserts that the rental income from the Autumn Creek house, along with the proceeds from the sale of a car were given to Plaintiffs "to attempt to offset the loss of investment." (MSJ Response at 3). "Any and all subsequent payments [to Plaintiffs] were made by Mrs. Perrine, in objection by the Defendant. Or without knowledge of the Defendant. As far as Defendant was concerned the investment was sold and all issues were settled." (MSJ Response at 3).

On May 6, 2021, Plaintiffs filed a Motion to Strike Responses and Motion to Compel Discovery (Dkt. 36). In the Motion, Plaintiffs sought to have the discovery responses filed by Debtor stricken as both untimely and improper because they were not signed by Debtor as required by Fed. R. Civ. P. 33(b)(5). Plaintiffs noted that even if the interrogatory responses were not stricken, Debtor had completely failed to produce any documents requested by Plaintiffs, and that the Court should compel production of those documents. Plaintiffs sought costs pursuant to Fed. R. Civ. P. 37(a)(5).

On May 11, 2021, Plaintiffs and Defendant filed a stipulation extending the deadline to complete discovery and file dispositive motions (Dkt. 38). The Court did not enter the stipulated order because a dispositive motion had already been filed and the motions to compel were pending.

On May 14, 2021, Plaintiffs filed a Response to Debtor's Motion to Withdraw Admissions (Dkt. 40). Plaintiffs assert that Debtor's Motion to Withdraw Admissions fails to offer any plausible reason for failing to timely answer the admissions request or to promptly move to have his deemed admissions set aside.

On May 19, 2021, Debtor filed a Response to Plaintiffs' Motion to Compel Discovery and Strike Responses (Dkt. 42). Debtor asserts that Plaintiff and Debtor agreed to file a stipulation regarding the extension of deadlines and adjournment of the trial date.

On June 9, 2021, the Court heard oral argument on: (1) Debtor's Motion to Withdraw Admissions, (2) Plaintiffs' Motion to Compel Discovery, and (3) Plaintiffs' Motion for Summary Judgment. The Court ruled on the Motion to Compel Discovery, finding that Debtor's Counsel proffered no good reason for failing to timely file properly signed responses to Plaintiffs' interrogatories, and awarding Plaintiffs costs and attorney fees as to that Motion, as required by Fed. R. Civ. P. 37(a)(5)(A). The Court took Debtor's Motion to Set Aside Admissions and Plaintiffs' Motion for Summary Judgment under advisement. Having now fully reviewed the record and the parties' arguments, and for the reasons set forth below, the Court grants Debtor's Motion to Withdraw Admissions and grants, in part, Plaintiffs' Motion for Summary Judgment.

II.

JURISDICTION

This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a).

III.

ANALYSIS

The sole dispositive issue before the Court is whether Plaintiffs have a claim against Debtor which should have been included on Debtor's chapter 13 bankruptcy schedules. If so, Debtor's failure to schedule that claim renders the claim non-dischargeable under 11 U.S.C. § 523(a)(3).[7] In establishing the existence of the claim, Plaintiffs' Motion for Summary Judgment relies, in part on the admissions set forth in Plaintiffs' Notice of Matters Deemed Admitted – admissions Debtor now seeks to have set aside. Thus, the Court will first address Debtor's Motion to Set Aside Admissions.

A.  DEBTOR'S MOTION TO SET ASIDE ADMISSIONS

Debtor seeks to withdraw the deemed admissions pursuant to Fed. R. Civ. P. 36 which governs requests for admission. That rule, made applicable to adversary proceedings by Fed. R. Bankr. P. 7036, provides in relevant part:

> **(1) Scope**.  A party may serve on any other party a written request to admit for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
> > (A) facts, the application of law to fact, or opinion about either; and
> >
> > (B) the genuineness of any described documents.
>
> . . .
>
> (3) **Time to Respond; Effect of Not Responding.**   A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.  A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.
>
> . . .

---

[7]  At the hearing on Plaintiffs' Motion for Summary Judgment, Debtor's counsel acknowledged that Debtor's failure to schedule Plaintiffs' claim, if it is found to be a claim and not an investment, gives rise to a non-dischargeable debt.

9

(b) **Effect of an Admission; Withdrawing or Amending it.** A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

Fed. R. Civ P. 36.

"[T]he failure to respond in a timely fashion does not require the court automatically to deem all matters admitted*." United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) (internal quotation marks and citation omitted). Courts have "considerable discretion over whether to permit withdrawal or amendment of admissions." *Kerry Steel, Inc. v. Paragon Industries, Inc*., 106 F.3d 147, 154 (6th Cir. 1997) (internal quotation marks and citation omitted).

In *Kerry Steel*, the Sixth Circuit set forth a two part test for permitting withdrawal or amendment of admissions under Rule 36(b): "(1) 'when the presentation of the merits of the action will be subserved thereby' and (2) 'when the party who obtained the admissions fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.'" *Id*. at 154 (citations omitted). The two-pronged test requires the following analysis:

"The first prong of the test articulated in Rule 36(b) is satisfied 'when upholding the admission would practically eliminate any presentation on the merits of the case.' " As far as the second prong of the test, " ' the prejudice contemplated ... is not simply that the party who initially obtained the admission will now have to convince the factfinder of its truth,' ... [but] rather, 'relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission.' "

"Under the second prong, the non-movant bears the burden of proof."

The Sixth Circuit in *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009), explained that Rule 36 "is essentially intended to facilitate proof at trials by obviating the need to adduce testimony or documents as to matters that are really not in controversy." Courts, however, have "considerable discretion" when determining whether to allow a party to withdraw or amend under Rule 36(b). Thus,

> "[e]ven when [the Rule 36(b)] factors are established, a [trial] court still has discretion to deny a request for leave to withdraw or amend an admission."

*Kapitus Servicing, Inc. v. Nikirk (In re Nikirk)*, 2020 WL 739664 (Bankr. E.D. Tenn. Feb. 13, 2020) at * 4 (footnote and internal citations omitted).

The first prong of the test under Rule 36(b) is whether setting aside the admissions will promote the presentation of the merits of the action. In this case, setting aside the admissions promotes the presentation of Debtor's case on the merits because Debtor has filed, albeit late and unsigned, responses to all of Plaintiffs' discovery requests (with the exception of document requests), and the Court has now thoroughly reviewed those responses along with Debtor's brief in opposition to the Motion for Summary Judgment and Debtor's affidavit (MSJ Ex. 5). Debtor also had a full and fair opportunity to argue his case and present his defenses at the hearing on these Motions. There are no written agreements in this case. Counsel for Debtor indicated on the record that he did not anticipate requesting any documents in the case, and Debtor's defenses were sufficiently articulated for the Court. (Dkt. 46, Recorded Hearing on MSJ at 12 minutes 47 seconds through 14 minutes 56 seconds).

The second prong under Rule 36(b) is whether setting aside the admissions will prejudice the party who obtained the admissions. Specifically, the inquiry is whether Plaintiffs will face any special difficulties in obtaining the evidence they need if the admissions are withdrawn. Here, the discovery cutoff date has passed, and Debtor did not file timely discovery responses, nor did he produce any documents. In essence, if the admissions are withdrawn, Plaintiffs are starting from square one. However, because the Court's review of the entire record in this case, including Debtor's late filed responses to Plaintiffs' discovery requests, warrants the entry of summary judgment for Plaintiffs, they will not be prejudiced if the Debtor's deemed admissions are withdrawn and Debtor's late filed responses are considered.

11

For these reasons, Defendant's Motion to Set Aside Admissions is granted.

B.  <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiffs' adversary complaint seeks a non-dischargeable judgment in the amount of $126,000 against Debtor for the repayment of interest-free loans made by Plaintiffs to Debtor to construct the Prairie Rose home.  Because the loans were not disclosed on Debtor's bankruptcy schedules, Plaintiffs assert that the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(3)(A). Debtor contends that there were no loans.  Rather, Plaintiffs simply "invested" the funds with the understanding that they would recover their principal investment, without interest, from a single source: the proceeds from the sale of the Autumn Creek home. According to Debtor, because Plaintiffs were paid all of the proceeds from the sale of the Autumn Creek home, albeit less than the full amount of their investment, they received all the funds to which they were entitled, and Plaintiffs have no claim against him in his bankruptcy.  The Court must, therefore, determine whether Plaintiffs have a claim against Debtor.  As Debtor's counsel acknowledged at the hearing on Plaintiff's Motion for Summary Judgment, if Plaintiffs do hold a claim against Debtor, that the claim would not be dischargeable in Debtor's bankruptcy.

1.  <u>Standard for Summary Judgment</u>

Pursuant to Fed. R. Civ. P. 56, made applicable to adversary proceedings by  Fed. R. Bankr. P. 7056,  summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Id*. at 247-48.  A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.'" *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (quoting

*Anderson*, 477 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the

non-moving party's case is lacking." *Kalamazoo River Study Group v. Rockwell Int'l Corp.*,171

F.3d 1065, 1068 (6th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

"The burden then shifts to the non-moving party to come forward with specific facts, supported

by evidence in the record, upon which a reasonable jury could return a verdict for the non-

moving party." *Id.* (citing *Anderson*, 477 U.S. at 248). In meeting their respective burdens of

proof,

> [T]he moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the jury. [*Street v. J.C. Bradford & Co.,* 886 F.2d at] 1478. Essentially, a motion for summary judgment is a means by which to "challenge the opposing party to 'put up or shut up' on a critical issue." *Id*.

> If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury. In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, if the evidence is insufficient to reasonably support a jury verdict in favor of the nonmoving party, the motion for summary judgment will be granted. *Street*, 886 F.2d at 1477. Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

> While a court must proceed cautiously in considering subjective issues, the Supreme Court has indicated that the existence of subjective issues does not necessarily foreclose summary judgment disposition. *Street*, 886 F.2d at 1479 (synthesizing *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986), *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). Thus, a nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations or subjective evidence. Instead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment. *Id*.

Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson*, *Celotex*, and *Matsushita*, trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. *Street*, 886 F.2d at 1480. The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted. *Id*.

*Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149-50 (6th Cir. 1995).

In this case, Debtor contends, among other things, that he (as opposed to his wife, Jennifer or Custom Estate Builders, Inc.) did not receive any of the money provided by Jennifer's parents, and he (as opposed to his wife, Jennifer) never acknowledged or agreed that the funding provided by Jennifer's parents was a loan. As discussed *infra*, Debtor asserts that he *believed* that the funding provided by his in-laws was intended to be an investment, albeit without interest or any potential return on investment if the Autumn Creek house sold for *more* that the principal amount invested. However, as noted above, Debtor cannot avoid a properly supported motion for summary judgment by simply arguing that he relies solely or in part upon credibility considerations or subjective evidence. Instead, Debtor must present affirmative evidence to defeat a properly supported motion for summary judgment. Moreover, to the extent that Debtor's subjective belief puts his state of mind at issue, "cases involving intent or state of mind are not always inappropriate for summary judgment." *Sicherman v. Rivera (In re Rivera)*, 2007 WL 130415 at *6 (B.A.P. 6th Cir. Jan. 11, 2007) (citing *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479 (6th Cir. 1989)). Rather,

[E]ven where intent is at issue, summary judgment is appropriate if all reasonable inferences defeat the claims of one side . . . . "[S]ummary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation." *Medina-Munoz v. J.R. Reynolds Tobacco Co*., 896 F.2d 5, 8 (1st Cir. 1990). Furthermore if a denial of knowledge is "utterly implausible, in light of conceded or irrefutable evidence that

14

no rational person could believe it[,]" summary judgment is appropriate. *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).

*Id*. (other citations omitted). This is just such a case. [8]

## 2. Plaintiffs are Pre-Petition Creditors with a Claim Against Debtor

As previously noted, in deciding Plaintiffs' Motion for Summary Judgment, the Court must first determine whether Plaintiffs hold a claim that should have been included on Debtor's bankruptcy schedules or are merely disappointed investors who have no right to repayment from Debtor.

The Code defines "claim" very broadly, as,

> (A) the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]

11 U.S.C. § 101(5)(A). *See Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)("'we have previously explained that Congress intended this language to adopt the broadest available definition of 'claim'"). Under section 101(5)(A), to have a claim, Plaintiffs must show that they possess a right to payment. According to Plaintiffs, their right to payment arises from their bridge financing and Defendants' failure to repay it. There do not appear to be any "genuine issues of

---

[8] The Court also recognizes that "[S]ummary judgment should not be granted unless the moving party has had the opportunity to discover information essential to opposition." *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc*., 936 F.2d 889, 893 (6th Cir. 1991) (citations omitted). "The need to allow adequate discovery is not without limits, however, and a trial court is given wide discretion in balancing the needs and rights of both the plaintiff and defendant." *Id*. (citations omitted). "The general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996). The very purpose of discovery is to flesh out facts that are necessary to support or refute a party's claim. It would be improper to expect a party to be able to withstand the test of proofs required of a motion for summary judgment, without the benefit of discovery. The plain language of Rule 56(c) mandates entry of summary judgment, "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this case, Defendant had more than adequate time to complete discovery and the Court gave Debtor a full and fair opportunity to argue his case and present his defenses at the hearing on the Motion for Summary Judgment, a hearing that was held after the discovery cutoff date had passed. As previously noted, Debtor's counsel indicated on the record that he did not anticipate the production of any other documents in the case, and his defense was sufficiently articulated for the Court. (Dkt. 46, Recorded Hearing on MSJ at 12 minutes 47 seconds through 14 minutes 56 seconds).

material fact" in dispute. The only dispute involves a legal issue; namely, whether Plaintiffs' funding was a loan or an investment. The undisputed facts tell a relatively simple story.

Defendants wanted to build the Prairie Rose home (a home Defendants still own jointly as tenants by the entireties) and intended to obtain third-party financing from a bank or other lender.[9] Instead, Plaintiffs offered to finance the construction interest-free. The parties did not execute a note or other written loan agreement.[10] It is clear that Debtor accepted Plaintiffs' funding because he knew construction commenced, and he admits that the builder was paid by funds provided by Plaintiffs. Moreover, Debtor acknowledges that, while he may not have requested or initiated this funding, he "relented to let Jennifer make the decision to accept funding from her parents . . . ." Interrogatory Responses at 1-2.

According to Debtor, the financing provided by Plaintiffs was "based on two implied factors"- the sale of the Autumn Creek property, and a mortgage with a third party financial institution, on the Prairie Rose home. Interrogatory Response at 1. Given the value of the Autumn Creek property at the time of the loans, it appears that the parties believed that there was sufficient equity in the Autumn Creek home to repay Plaintiffs in full. The parties did not contemplate a decline in the real estate market, nor did they discuss the possibility that Plaintiffs would not be repaid promptly out of the sale proceeds of the Autumn Creek home.

Unfortunately, the real estate market declined. By the time construction on the Prairie Rose home was complete, the value of the Autumn Creek home had decreased. Rather than sell the

---

[9] Debtor "was pursuing a conventional collateral loan for the 2772 Autumn Creek property (legal residence in 2006)"(Interrogatory Response 1b). *See also,* Affidavit of John Perrine, Dkt. No. 30-5, ¶ 3 (to fund the construction deposit required by the builder, Defendants planned to obtain an equity loan against the Autumn Creek property.) A conventional loan, of course, assumes the payment of interest and an obligation to repay.

[10] While there is no written agreement between the parties, the letters between Jennifer Perrine, a co-borrower and co-owner of both the Autumn Creek and Prairie Rose homes, and her mother, acknowledge the existence of an interest free loan with an expectation of repayment. Mrs. McCarty's letter is addressed to both Jennifer and John Perrine.

home immediately, Defendants retained the home. They were able to rent it out for a year or so and paid some of the rental payments to Plaintiffs. Eventually, the Autumn Creek home was sold, but the sale proceeds were insufficient to pay Plaintiffs in full. Both before and after the sale of the Autumn Creek home, Defendants made payments to Plaintiffs from other funds (rental proceeds, sale of a vehicle, tax refunds). However, at the time Debtor filed his bankruptcy petition, Plaintiffs had not been repaid in full.

While Debtor admits that Plaintiffs funded the construction of the Prairie Rose home, he asserts that the funds were an "investment" by Plaintiffs, not a loan. According to Debtor, Plaintiffs "invested" the amount necessary to complete construction of the Prairie Rose home, agreeing to look exclusively to the sale proceeds of the Autumn Creek home for any return on that investment. If, however, the Autumn Creek home failed to sell for an amount sufficient to pay back their "investment," Plaintiffs bore all risk of loss. That, according to Debtor, is what happened in this case. As a result, Plaintiffs have no claim against Debtor because they have no "right of payment." If the Autumn Creek home sold for more than enough to return the principal amount of Plaintiffs' investment, Plaintiffs would nevertheless receive only their principal without any return on their investment.

The Court finds that Debtor's characterization of this funding transaction as an "investment" is based entirely upon "improbable inferences" and is "utterly implausible" in light of the evidence in this case. *Sicherman v. Rivera (In re Rivera)*, 2007 WL 130415 at *6. To prevail, Debtor must have the Court conclude that the terms of Plaintiffs' "investment" was, at best, that Plaintiffs could recover their principal without interest or upside potential. In exchange for foregoing any interest or upside potential, Plaintiffs bore all risk of loss. An investment, however, by its very nature contemplates both a risk of loss and an opportunity for a return on

one's investment. *Black's Law Dictionary* 1122 (11th ed. 2019) ("investment" defined as "an expenditure to acquire property or assets to produce revenue.") *See also, Merriam-Webster.com* ("Investment" means "the outlay of money usually for income or profit.") Despite the nomenclature used by Debtor, this was not an "investment." The funding provided by Plaintiffs was simply an interest free loan. As such, Plaintiffs' have a right to payment and, therefore, hold a claim against Debtor as that term is defined in §101(5)(A) of the Bankruptcy Code.

With the exception of Debtor's characterization, all of the evidence presented supports the conclusion that this transaction was an interest free loan giving rise to a claim in this case. Prior to obtaining funding from Plaintiffs, Debtor "was pursuing a conventional collateral *loan* for the 2772 Autumn Creek property." (Interrogatory Response 1b, emphasis added). Plaintiffs funded construction draws to the builder directly rather than simply "investing" a lump sum with Defendants. Debtor's wife, the co-owner of both the Autumn Creek and Prairie Rose homes and co-borrower, and Debtor's wife's mother characterized this transaction as an interest free loan in correspondence regarding repayment.

Debtor's claim that the sole source of return or recovery on Plaintiffs' investment was the sale proceeds of the Autumn Creek home is also inconsistent with what actually transpired in this case. The loan balance was partially paid down prior to the sale of the Autumn Creek home (by way of the rental payments), thereby undermining Debtor's contention that the Autumn Creek sale proceeds were to be the sole source of recovery or return on Plaintiffs' investment. The loan balance was paid down after the sale through proceeds from a car sale and tax refunds, neither of which were related to the Autumn Creek home sale proceeds. Debtor's argument that he did not know of or approve *some* of these payments does not make them any less relevant in considering Plaintiffs' summary judgment motion. Based upon all of the evidence presented, the only

reasonable inferences to be made in this case support the contention that the subject transaction

was a loan giving rise to a right to payment and, therefore, a claim under the Bankruptcy Code.

### 3. Plaintiffs' Claim is Non-Dischargeable Under 11 U.S.C. § 523(a)(3)(A)

Under 11 U.S.C. § 521(1), a debtor is required to "file a list of creditors, and unless the

court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current

expenditures, and a statement of the debtor's financial affairs." Bankruptcy Rule 1009 provides

that a debtor may file an amended schedule to include an omitted debt, but the amendment must

be filed, and the creditor notified, within the time period allowed for the creditor to timely file a

proof of claim and otherwise participate in the case.

Section 523(a)(3) of the Bankruptcy Code addresses the consequences of failing to fully

disclose all debts and provides, in relevant part:

> (a) A discharge under section 727, 1141, 11921 1228(a), 1228(b), or 1328(b) of this title
> does not discharge an individual debtor from any debt—
>> . . .
>> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name,
>> if known to the debtor, of the creditor to whom such debt is owed, in time to permit-
>> -
>>> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this
>>> subsection, timely filing of a proof of claim, unless such creditor had notice
>>> or actual knowledge of the case in time for such timely filing[.]

This section excepts from discharge any debt that was not scheduled in time to permit timely action

by the creditor to protect its rights unless the creditor had notice or actual knowledge of the case.

In the present case, Debtor did not include the debt owed to Plaintiffs on his schedules, nor

did he include Plaintiffs on his list of creditors. Debtor does not dispute Plaintiffs' assertion that

Plaintiffs did not become aware of his bankruptcy until they served Debtor notice of the state court

lawsuit in December 2020, long after the August 8, 2018 claims bar date in Debtor's chapter 13

case had passed. Plaintiffs did not file a claim in Debtor's bankruptcy because they did not have

timely notice of the bankruptcy. By the time they were aware of the bankruptcy, it was too late to have the claim treated in Debtor's plan. Pursuant to section 523(a)(3)(A) of the Bankruptcy Code, Plaintiffs claim is non-dischargeable in Debtor's bankruptcy.[11]

### 4. Plaintiffs are Entitled to Have the Stay Partially Lifted as to Debtor (Count II)

Plaintiffs do not dispute that the automatic stay applies to any non-dischargeable judgment they obtain from this Court. In Count II of the Complaint, however, Plaintiffs ask the Court to lift the stay so that Plaintiffs can pursue collection from Debtor outside of bankruptcy. In light of the circumstances in this case, the Court finds that partially lifting the stay is appropriate.

Under 11 U.S.C. § 362, the filing of a bankruptcy petition creates an automatic stay of certain actions against property of the estate and/or the debtor. Specifically, section 362(d) states, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief form the stay provided under subsection (a) of this section, such as by terminating annulling, modifying, or conditioning such stay –
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party interest;
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if –
> >
> > > (A) the debtor does not have any equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

Apart from the statute's language incorporating lack of adequate protection of an interest in property, the Bankruptcy Code does not define "cause", leaving courts to consider what constitutes cause on a case by case basis. *Laguna Associates L.P. v. Aetna Casualty and Surety*

---

[11] Because Debtor's bankruptcy is a chapter 13 case, even if Plaintiffs had wanted to file a late claim, the claim would be disallowed. *In re Tench*, 2016 WL 2892497, *3 (BAP 6th Cir. May 11, 2016)

*Co. (In re Laguna Associates L.P.)*, 30 F.3d 734, 737 (6th Cir. 1994); *see also In re Indian River Estates, Inc.,* 293 B.R. 429, 433 (Bankr. N.D. Ohio 2003)("As used in § 362(d)(1), the term 'cause' is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations" (citation omitted)). "In determining whether cause exists, the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." *In re C&S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995)(finding that a modification of the stay was "for the benefit of all involved").

Most motions for relief from the automatic stay are brought by *secured* creditors seeking to foreclose on, or repossess, collateral. Often, an *unsecured* creditor seeks to have the stay lifted in order to pursue a determination of the debtor's *liability* in another forum. The case at bar is unusual in that Plaintiffs are unsecured creditors with a non-dischargeable judgment seeking to have the stay lifted in order to pursue *collection* of their pre-petition debt outside of Debtor's bankruptcy, the very relief the stay was designed to prevent.[12]

Plaintiffs assert that the stay should be lifted because,

It would be inequitable to require Plaintiffs to wait for conclusion of [Debtor's] plan to seek recovery on account of the loan, particularly when all other unsecured creditors are being paid in full. Plaintiff's claim is not secured or protected (adequately or otherwise). Plaintiffs are unduly prejudiced by (1) their inability to participate in Defendant's

---

[12]     The oft-quoted legislative history of § 362 explains the intended scope and purpose of the automatic stay:

> It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of their claims in preference and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure in which all creditors are treated equally. H.R.Rep. No. 95–595, at 340 (1977), as reprinted in 1978 U.S.C.C.A.N. 5787, 6296–97; S.Rep. No. 95–989, at 49, 54–55 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5835, 5840–41.

*Lewis v. Negri Bossi USA (In re Mathson Ind. Inc.)*, 423 B.R. 643, 647-48 (E.D. Mich. 2010).

bankruptcy case, as the claims bar date has passed; and (2) their inability to pursue their claim outside of bankruptcy due to the automatic stay.

(MSJ at 15).[13]

On the specific facts of this case, the Court finds that the overall goals of the Bankruptcy Code would be best served by lifting the stay solely as to property held by Defendants jointly and/or by the entireties. Debtor's confirmed plan has been in place since August 2018. It provides for payment in full only to Debtor's unsecured creditors who filed timely claims. Were Plaintiffs simply unsecured creditors, rather than a joint creditor of both Debtor and defendant Jennifer Perrine, the Court would not lift the stay and risk derailing Debtor's plan. *See In re Hopkins*, 2012 WL 2131952 (Bankr. W.D. Mo. June 7, 2012). Here, however, Debtor's schedules indicate that there is only one jointly held asset, the Prairie Rose home, and the only joint liability is the non-dischargeable judgment being issued pursuant to this Opinion. Because only joint creditors can pursue payment from joint assets, allowing Plaintiffs to pursue the Prairie Rose home will not disrupt Debtor's confirmed plan.

Summary Judgment on Count II of Plaintiff's Complaint is, therefore, granted in part. The automatic stay in this case is lifted solely as to assets Debtor holds jointly or by the entireties with Jennifer Perrine.

5. <u>Plaintiffs are Entitled to Have the Stay Lifted as to the Co-Debtor (Count III)</u>

Upon the filing of a Chapter 13 case, a stay goes into effect that protects not only the debtor, but also a person who is liable with the debtor on a consumer debt of the debtor. 11 U.S.C. § 1301(a). The co-debtor stay embodied in § 1301(a) prevents a creditor from acting to collect any

---

[13] In addition to these circumstances, Plaintiffs assert that Debtor's "bad faith in filing this case while failing to notify Plaintiffs, constitute cause to lift the stay." (MSJ at 15). This Court makes no findings regarding Debtor's intent relative to scheduling Plaintiffs' claim. Intent is not a requirement for determining non-dischargeability under section 523(a)(3)(A).

22

part of a consumer debt of the debtor from any individual liable on that debt with the debtor or that secured the debt, unless that individual became liable or secured the debt in the ordinary course of that person's business. The stay continues until the case is closed, dismissed, or converted to Chapter 7 or Chapter 11. This stay is "designed to protect a debtor proceeding under Chapter 13 by insulating him from indirect pressure exerted by creditors or friends and relatives that may have cosigned an obligation of the debtor." *Abraham and Straus v. Francis (In re Francis)*, 15 B.R. 998, 1000 (Bankr.E.D.N.Y.1981)(citation omitted).

A creditor prevented from acting against a co-debtor under this section may obtain relief from the stay for any of the following reasons: (1) the codebtor, rather than the debtor, received the consideration for the claim; (2) the plan does not propose to pay the claim in full; or (3) the creditor would be irreparably harmed by continuation of the stay. 11 U.S.C. § 1301(c). With respect to the third reason, irreparable harm, *Collier on Bankruptcy* states:

> Quite clearly, the creditor must show harm exceeding the simple delay caused by the stay, otherwise, relief would be granted in virtually every case. The legislative history gives as examples cases in which codebtors file for bankruptcy themselves, are deteriorating financially or are about to leave the jurisdiction, i.e. situation which could require immediate action by a creditor in order to preserve its rights. Absent such circumstances, or when the creditor may suffer harm for other reasons such as its own inaction, relief from the stay should not be granted.

8 *Collier on Bankruptcy* ¶ 1301.03 [2][c] (16th Ed.).

In the case at bar, the Court finds that lifting the co-debtor stay as to Jennifer Perrine is appropriate. The joint debt owed to Plaintiffs is unsecured debt for which Jennifer Perrine received consideration equal to that received by Debtor. Plaintiffs claim is not paid in full (or at all) by Debtor's plan. Lifting the stay to allow Plaintiffs to pursue collection against Jennifer Perrine, and any assets she owns individually or jointly with Debtor, has no effect on Debtor's bankruptcy.

Summary Judgment is granted on Count III of Plaintiffs' Complaint and the co-debtor stay is lifted as to Jennifer Perrine.

IV.

CONCLUSION

For the reasons set forth above, Defendant/Debtor's Motion to Set Aside Admissions is GRANTED.  Plaintiffs' Motion for Summary Judgment is GRANTED as to Count I, GRANTED IN PART as to Count II, and GRANTED as to Count III.  The Court awards judgment in favor of Plaintiffs and against Debtor in the amount of $126,000, which judgment is non-dischargeable pursuant to section 523(a)(3)(A).

**Signed on July 30, 2021**

**/s/ Joel D. Applebaum**

**Joel D. Applebaum**
**United States Bankruptcy Judge**